

FILED
JAN 05 2022
Mark C. McCartt, Clerk
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

1. Francis Energy, LLC, f/k/a Francis Solar, LLC,

Plaintiff,

vs.

1. Broadband Telcom Power, Inc.

Defendant.

Case No. 22 CV - 008 CVE - SH

**NOTICE OF REMOVAL OF ACTION**

TO: THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA; THE DISTRICT COURT OF TULSA COUNTY OF THE STATE OF OKLAHOMA; FRANCIS ENERGY, LLC

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant Broadband Telcom Power, Inc. ("Defendant") hereby removes this matter from the District Court of Tulsa County of the State of Oklahoma, to the United States District Court for the Northern District of Oklahoma.

1. The United States District Court for the Northern District of Oklahoma has original jurisdiction over this matter pursuant to 28 U.S.C § 1332. This action is removable pursuant to 28 § 1441, as it is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

2. This action is removable to this Court, as this Court is the district embracing the place where the state court action is pending. 28 U.S.C. § 1441(a).

3. On December 15, 2021, an action was commenced in the District Court of Tulsa County of the State of Oklahoma, captioned *Francis Energy, LLC, f/k/a Francis Solar, LLC v. Broadband Telcom Power, Inc.*, Case No. CJ-2021-3571 ("State Court Action"). In accordance

with 28 U.S.C. § 1446(a) and LCvR81.2, a copy of the petition that was filed in the State Court Action is attached as Exhibit "A," together with a copy of the docket sheet and all other filings in the State Court Action.

4.    This Notice of Removal has been filed within thirty days after receipt by Defendant of a copy of the initial pleading setting forth the claim for relief. Accordingly, this Notice of Removal is timely under 28 U.S.C. § 1446(b)(1).

5.    The District Court for Tulsa County, Oklahoma is located within the United States District for the Northern District of Oklahoma. Accordingly, venue is proper in the Northern District of Oklahoma pursuant to 28 U.S.C. § 1446(a).

6.    Plaintiff Francis Energy, LLC ("Plaintiff"), alleges in its Petition that it is an Oklahoma limited liability company, with its principal place of business in Tulsa, Oklahoma.

7.    Defendant is a California corporation with its principal place of business in Santa Ana, California.

8.    Accordingly, complete diversity of citizenship exists between Plaintiff and Defendant, pursuant to 28 U.S.C. § 1332(a)(2).

9.    Plaintiff alleges in its Petition that it is entitled to relief in an amount in excess of $75,000, which exceeds the amount required for diversity jurisdiction under 28 U.S.C. § 1332.

10.    In accordance with 28 U.S.C. § 1446(d), a copy of this Notice of Removal of Action is being served on all parties to the action, and filed with the Clerk of the District Court of Tulsa County of the State of Oklahoma.

WHEREFORE, Defendant Broadband Telcom Power, Inc. hereby gives notice that the above-referenced action pending against it in the District Court of Tulsa County of the State of Oklahoma, has been removed to this Court.

January 5, 2022

Respectfully Submitted,

Kayci Bair Hughes, OBA #18399
Randall J. Yates, OBA #30304
CROWE & DUNLEVY
A Professional Corporation
500 Kennedy Building
321 South Boston Avenue
Tulsa, Oklahoma 74103
(918) 592-9800
(918) 592-9801 (Facsimile)
kayci.hughes@crowedunlevy.com
randall.yates@crowedunlevy.com

Christopher Staine, OBA #30263
CROWE & DUNLEVY
A Professional Corporation
Spaces McKinney Avenue
1919 McKinney Ave.
Suite 100
Dallas, TX 75201
(214) 420-2163
(214) 736-1762 (Facsimile)
christopher.staine@crowedunlevy.com

*Attorneys for Broadband Telcom Power, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Name(s) Only:

I hereby certify that on January 5, 2022 (Date), I served the same document by:

☒ U.S. Postal Service ☐ In-Person Delivery ☐ Courier Service ☐ Email

on the following, who are not registered participants of the ECF System:

Name(s) and Address(es):

Nora O'Neill, OBA #19901
Frederic Dorwart Lawyers, PLLC
124 East Fourth Street
Tulsa, Oklahoma 74103

Randall J. Yates

**IN THE DISTRICT COURT OF TULSA COUNTY**
**STATE OF OKLAHOMA**

FRANCIS ENERGY, LLC, f/k/a FRANCIS SOLAR, LLC

Plaintiff,

v.

BROADBAND TELCOM POWER, INC.

Defendant.

Case No. CJ-2021-03571

KELLY M. GREENOUGH

DISTRICT COURT
FILED
DEC 15 2021
DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

**PETITION**

Plaintiff Francis Energy, LLC ("Plaintiff" or "Francis Energy") for its claims against Broadband Telcom Power, Inc. ("Defendant" or "BTC") alleges and states as follows:

1. Plaintiff is an Oklahoma limited liability company with its principal place of business in Tulsa County, Oklahoma.

2. Defendant is a California corporation doing business in the State of Oklahoma.

3. This Court has jurisdiction over the parties and the subject matter and Tulsa County is the proper venue for this action.

**FACTUAL BACKGROUND**

4. On April 29, 2019, Francis Energy (formerly operating under the name of Francis Solar, LLC) and BTC entered into an agreement governing Francis Energy's purchase of electric vehicle charging systems (the "Product") from BTC (the "Agreement"). A copy of the Agreement is attached hereto as Exhibit A.

5. Pursuant to the Agreement, BTC promised Francis Energy that "[u]pon commissioning the Product, if it found that the Product does not meet the manufacturer specifications (including rated power output within a 2.5% tolerance), then Seller shall repair or

**EXHIBIT A**

replace the defective Product with identical Product within thirty (30) days at its sole cost and expense. *See* Exhibit A at Section 6.

6. Pursuant to the Agreement, BTC also provided an express warranty for the Products it supplied stating that "Seller warrants the products shall be free from defects in material and workmanship for a period of . . . two (2) years from the date the Product is delivered to the destination . . ." *See id.* at Section 10.

7. Pursuant to the Agreement, BTC also agreed to defend, indemnify and hold harmless Francis Energy against all damages, claims or liabilities and expenses (including attorney's fees) arising out of or resulting in any way from and defect in the Product. *See id.* at Section 13.

8. In late 2019 and 2020, as Francis Energy installed hundreds of electric vehicle charging stations throughout the State of Oklahoma, Francis Energy purchased over $10,000,000 in Products from BTC.

9. As Francis Energy began commissioning the Products BTC supplied, it continually encountered defects in the functionality of the Products, including, for example, equipment and software malfunctions and chargers that did not deliver the charging capacity represented.

10. Francis Energy continually alerted BTC to these failures, but BTC did not repair or replace the Product as promised and failed to indemnify Francis Energy for the costs it incurred as a result of BTC's defective Product.

11. Francis Energy has suffered harm to its business reputation due to the Products repeated malfunctions.

12. Francis Energy has suffered lost revenue due to the Products repeated malfunctions.

**COUNT I**
**Breach of Contract**

Francis Energy reincorporates each of the previous paragraphs as if fully set forth herein.

13. Francis Energy and BTC entered into an Agreement.

14. Pursuant to the Agreement, BTC promised to repair or replace any defective Products delivered to Francis Energy and to indemnify Francis Energy from any damages, claims or liabilities and expenses (including attorney's fees) arising out of or resulting in any way from Product defects.

15. In breach of the Agreement, BTC has failed to repair and replace its defective Products and has not indemnified Francis Energy for the costs it has incurred as a result of BTC's defective Products.

16. As a direct result of BTC's breach of the Agreement, Francis Energy suffered damages in an amount to be proven at trial but believed to be in excess of $75,000.

**COUNT II**
**Breach of Warranty**

Francis Energy reincorporates each of the previous paragraphs as if fully set forth herein.

17. BTC expressly warranted to Francis Energy that the Products it purchased from BTC would be free from defects and workmanship for a period of two years after delivery.

18. Francis Energy purchased BTC's Products in reliance upon this warranty.

19. This warranty was false and BTC's Products have proven habitually defective.

20. As a result of BTC's breach of its express warranty to Francis Energy, Francis Energy suffered damages in an amount to be proven at trial but believed to be in excess of $75,000.

**COUNT III**
**Unjust Enrichment**

Francis Energy reincorporates each of the previous paragraphs as if fully set forth herein.

21. Francis Energy paid good and valuable consideration to BTC in connection with procurement of BTC's Products.

22. BTC knowingly accepted the benefit of the consideration without supplying defect free Products.

23. BTC was unfairly and unjustly enriched by receiving the benefit of Francis Energy's consideration without delivering defect free Products.

24. As a direct result of BTC's unjust enrichment, Francis Energy suffered damages in an amount to be proven at trial but believed to be in excess of $75,000.

WHEREFORE, Francis Energy respectfully request that this Court enter judgment in its favor against BTC for an amount of damages to be determined but in excess of $75,000, plus punitive damages, together with the costs of this action, pre-judgment and post-judgment interest, a reasonable attorney fee and such other relief to which Francis Energy may be entitled at law or in equity.

Respectfully submitted,

Nora R. O'Neill
Nora O'Neill, OBA #19901
**FREDERIC DORWART LAWYERS, PLLC**
124 East Fourth Street
Tulsa, Oklahoma 74103
Telephone: (918) 583-9922
Facsimile: (918) 583-8251
noneill@fdlaw.com

*Counsel for Francis Energy, LLC*



FRANCIS

## General Terms and Conditions of Sale and Delivery

1. **Term.** The General Terms (as defined below) shall be effective commencing on April 29, 2019 (the "**Effective Date**") through the one (1) year anniversary of the Effective Date (the "**Term**"), unless the General Terms are terminated earlier in accordance with its terms.

2. **Application.** The general terms and conditions of sale and delivery set forth herein (the "**General Terms**") shall apply to all offers, orders, confirmations, contracts, deliveries and other transactions, whether written or oral, between Seller and Buyer in connection with the procurement and delivery of electric vehicle charging stations. All purchase orders, in substantially the same form as set forth in Exhibit A ("**POs**"), entered into by Buyer and Seller shall be governed by these General Terms, and if a conflict exists between a PO and the General Terms, the General Terms shall prevail. The General Terms may not be amended without the express written consent of both Buyer and Seller, nor may the General Terms (or any PO thereunder) be transferred or assigned to a third-party without the express written agreement of the other Party.

3. **Purchase Order; Delivery**. Upon receipt of an executed PO, Seller hereby guarantees to deliver the DC fast charging electric charging systems, component parts and any other materials necessary for the systems to perform as intended (the "**Product**"), in the quantities set forth therein, at the price set forth therein, on or before the delivery date set forth in the applicable PO (in each case, a "**Guaranteed Delivery Date**"). All deliveries shall be made DDP (Incoterms 2010) to the destination designated by Buyer in the PO. At any time before shipment from Seller's facility, Buyer may change the destination specified in the PO, at no additional cost to Buyer. For the avoidance of doubt, title and risk of loss of the Products shall transfer upon delivery to the destination specified by Buyer in the PO. To the extent air freight charges are included in the Price, as set forth in the applicable PO, Buyer may request Seller to air freight the Product, at Buyer's cost and expense, *provided, however,* that Seller shall pay all expediting costs, including air freight, if necessary to meet the First Guaranteed Delivery Date or the Last Guaranteed Delivery Date, in addition to the liquidated damages set forth in Section 20 below.

4. **Delivery Delay.** Seller understands and acknowledges that meeting the Guaranteed Delivery Dates set forth in Exhibit B is a critical component of the consideration hereunder, and failure of Seller to meet such Guaranteed Delivery Dates shall cause significant financial harm to Buyer, which at this point in time, is difficult, if not impossible, to ascertain. Accordingly, in addition to all other Buyer's rights and remedies at law or in equity:

    a. in respect of the Guaranteed Delivery Date specified in each 50KW PO, (the "**First Milestone Date**"), Seller shall pay Buyer, in immediately available funds, a one-time liquidated damages fee of five thousand US Dollars ($5,000) per 50KW charger, if the delivery date is not met.
    b. in respect of the Guaranteed Delivery Date specified in the last PO under these General Terms (the "**Last Milestone Date**"), Seller shall pay Buyer, in immediately available funds, a one-time liquidated damages fee of ten thousand US Dollar ($10,000) per charger, if the delivery date is not met.

5. **Cancellation.**

a. Buyer reserves the right to terminate the General Terms, any PO, or any portion of a PO without liability, if (a) delivery is not made on or before the date specified in the PO; (b) Seller ceases to conduct its operation in the normal course of business; (c); (d) proceedings are instituted against Seller under the bankruptcy laws or any other laws relating to the relief of creditors; (e) a receiver is appointed or applied for by Seller, or (f) any assignment is made by Seller for the benefit of creditors.
b. Seller reserves the right to terminate the General Terms, any PO, or any portion of a PO without liability, if (a) Buyer ceases to conduct its operation in the normal course of business; (b) proceedings are instituted against Buyer under the bankruptcy laws or any other laws relating to the relief of creditors; (d) a receiver is appointed or applied for by Buyer, or (e) any assignment is made by Buyer for the benefit of creditors.
c. Buyer may terminate any PO within sixty (60) days prior to scheduled shipment from Seller's facility without any liability therefor.

6. **Rejection.** Buyer shall inspect the Product for external damage and/or defects within ten (10) days of delivery of the Product to the destination. If damage or defects are visually found, upon presentation of photographic evidence to Seller, and review and approval by Seller, Seller agrees to repair and/or replace the Product within thirty (30) days at its sole cost and expense, provided such damage or defect was not caused by Buyer. Upon commissioning of the Product, if it is found that the Product does not meet the manufacturer specifications (including rated power output within a 2.5% tolerance), then Seller shall repair or replace the defective Product with identical Product within thirty (30) days at its sole cost and expense.

7. **Invoice and Payment.** Upon delivery of the Products to the destination specified in the PO (receipt of which shall be acknowledged by Buyer to Seller), Seller shall invoice Buyer for the applicable Product unit price set forth in Exhibit C (the "Price"). With respect to the 50KW Product, Buyer shall pay Seller within ten (10) business days of commissioning of the 50KW Product (expected but not guaranteed to occur on or before July 15). Buyer shall notify Seller within five (5) business days of the commissioning of any products purchased under this Agreement. For all other Product (other than Level 2 Product), Buyer shall pay Seller within forty-five (45) days of receipt of the applicable invoice. For any Level 2 Product, Buyer shall pay Seller within ten (10) business days of receipt of the applicable invoice. Seller may apply a default interest rate of eighteen percent (18%) in the event of late payment hereunder, calculated from the payment due date to the date the payment obligation is paid in full. Seller may terminate the General Terms if Buyer fails to pay outstanding invoices within 60 days of the applicable due dates.

8. **Reports; Audit Rights; Notice.** Buyer shall have the right to inspect, from the Effective Date until all POs have been satisfied by Seller in full, the Product at Seller's places of business, upon reasonable notice and during working hours. Once per month from the Effective Date, Seller shall provide a progress report, in form and substance typically provided by Seller to its other customers, in respect of Products under existing POs. Such progress report shall also include a certification from Seller that the delivery dates set forth in the then outstanding POs will be met. If either (a) Buyer is not satisfied with the contents of the progress reports, acting reasonably and in consultation with Seller or (b) Seller cannot certify that the delivery dates will be met, then among other rights at law or in equity, Buyer shall have the right to inspect the Philippines facilities (or other facilities where the Products are being manufactured, at Seller's sole cost and expense, including reasonable travel and other expenses. If at any time Seller believes that it will not able to fulfill a Purchase Order, it shall notify Buyer immediately.

9. **Replacement Product.** In the event Seller fails to meet a Guaranteed Delivery Date, or prior thereto, it is determined by Buyer that Seller cannot meet the Guaranteed Delivery Date, Buyer shall have the right to terminate the undelivered portion of the applicable PO, and in addition to all other remedies at law or in equity, Buyer shall have the right to procure replacement Product from third-party vendors.

10. **Warranty.** Seller warrants that the Products shall be free from defects in materials and workmanship for a period of (a) two (2) years from the date Product is delivered to the destination, or (b) in the case Buyer acquires the Seller's extended warranty, five (5) years from the date Product is delivered to the destination. EXCEPT AS OTHERWISE SET FORTH IN THIS AGREEMENT, THE FOREOGING WARRANTIES ARE EXCLUSIVE AND IN LIEU OF ALL OTHER EXPRESS AND IMPLIED WARRANTIES, INCLUDING BUT NOT LIMITED TO IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. Such warranty shall be freely assignable to any third-party owner of the Product, if applicable.

11. **Most Favored Nation Status.** Seller warrants that the prices offered to Buyer, as set forth in Exhibit C, shall not be higher than similar Products with similar PO quantities and warranty conditions offered to third-parties for the duration of the Term (an "MFN Event"). If an MFN Event occurs, Seller shall notify Buyer immediately, and the prices set forth in Exhibit C shall be revised downward to equal the price of similar Product offered to a third-party, This Section 10 shall not apply to any business conducted with Seller's parent company; Innogy SE, its affiliates, subsidiaries, or related parties.

12. **Intellectual Property.** Seller agrees upon receipt of notification to promptly assume full responsibility for defense of any suit or proceeding which may be brought against Buyer or its agents, customers, or other vendors for alleged patent infringement, as well as for any alleged unfair competition resulting from similarity in design, trademark or appearance of goods or services furnished hereunder, and Seller further agrees to indemnify Buyer, its agents and customers against any and all expenses, losses, royalties, profits and damages including court costs and attorney's fees resulting from any such suit or proceeding, including any settlement.

13. **Mutual Indemnification.**

    a. Seller shall defend, indemnify and hold harmless Buyer against all damages, claims or liabilities and expenses (including attorney's fees) arising out of or resulting in any way from (a) any defect in the Product, (b) Seller's gross negligence or willful misconduct, or (c) breach of the FCPA.
    b. Buyer shall indemnify Seller against all damages, claims or liabilities or expenses (including attorney's fees) arising out of or resulting in any way from Buyer's gross negligence or willful misconduct.

14. **Termination.** Unless otherwise specified elsewhere in the General Terms, either Party may terminate these General Terms in the event of a breach of the General Terms or an outstanding PO, which, if capable of being cured, such breach is not cured within thirty (30) days of written notice from the non-defaulting party. Notwithstanding the above, Buyer may terminate the General Terms immediately if the Last Milestone Date is not met, and such failure to deliver on such date is not cured within 10 (ten) days from the Last Milestone Date.



FRANCIS

15. **Entire Agreement.** These General Terms and any documents referred to on the face hereof, including POs, constitute the entire agreement between the Parties in respect of the delivery of Product to Buyer.

16. **Survival.** The following provisions shall expressly survive termination of these General Terms (and any PO thereunder): Sections 4, 10, 12, 13, 15, 16, 17, 18, 19 and 21.

17. **Waiver.** Buyer's failure to insist on performance of any of the terms or conditions herein or to exercise any right or privilege or Buyer's waiver of any breach hereunder shall not thereafter waive any other terms, conditions or privileges whether of the same or similar type.

18. **Maximum Liability; No Consequential Damages.**, in no event shall Buyer or Seller be liable for any special, punitive, incidental, indirect, exemplary or consequential damages of any nature whatsoever. The Maximum Liability under these General Terms (including POs) shall be limited to the total Price of all POs entered into under these General Terms.

19. **Choice of Law.** The General Terms (and associated POs), shall be governed by, and construed under the internal laws of the State of Oklahoma, without regard to principles of conflict of law, as the same may be from time to time in effect, including, without limitations the Uniform Commercial Code as in effect in the State of Oklahoma. The venue for any dispute hereunder shall be in the state or federal courts located in Tulsa County, Oklahoma. THE PARTIES HEREBY DISCLAIM ANY RIGHT TO A JURY TRIAL.

20. **Force Majeure.** In the event of a Force Majeure, the Parties shall be excused from performing its obligations for so long as such Force Majeure event is occurring, provided, however, that if a Force Majeure event continues for ten (10) or more continuous days, either Party may terminate the General Terms (and outstanding POs) hereunder. Force Majeure shall include weather-related acts of God, but shall specifically exclude labor or other work stoppages, terrorism, government expropriation, or other man-made events.

21. **Foreign Corrupt Practices Act (FCPA).** Seller warrants that in the performance of its obligations hereunder, it shall not, either directly or indirectly, act in any fashion or take any action which would, or could be expected to, violate the FCPA. Breach of this provision shall result in automatic termination of the General Terms (and all POs thereunder).

**ACCEPTED AND AGREED:**

| **Buyer:** | **Seller:** |
|---|---|
| **Francis Solar, LLC** | **Broadband Telecom Power, Inc.** |
| **By:** [signature] | **By:** [signature] |
| **Name:** David Jankowsky | **Name:** Thomas Rendina |
| **Title:** President | **Title:** Director of Finance |

Exhibit A-004


OKLAHOMA
State Courts Network

The information on this page is NOT an official record. Do not rely on the correctness or completeness of this information. Verify all information with the official record keeper. The information contained in this report is provided in compliance with the Oklahoma Open Records Act, 51 O.S. 24A.1. Use of this information is governed by this act, as well as other applicable state and federal laws.

**IN THE DISTRICT COURT IN AND FOR TULSA COUNTY, OKLAHOMA**

FRANCIS ENERGY LLC, F/K/A
FRANCIS SOLAR LLC,
Plaintiff,
v.
BROADBAND TELCOM POWER INC,
Defendant.

**No. CJ-2021-3571**
**(Civil relief more than $10,000: BREACH OF AGREEMENT - CONTRACT)**

Filed: 12/15/2021

Judge: Civil Docket F

## PARTIES

BROADBAND TELCOM POWER INC, Defendant
FRANCIS ENERGY LLC, Plaintiff

## ATTORNEYS

| Attorney | Represented Parties |
| --- | --- |
| O'NEIL, NORA (Bar #19901)<br>124 E FOURTH STREET<br>TULSA, OK 74103 | FRANCIS ENERGY LLC, |

## EVENTS

None

## ISSUES

For cases filed before 1/1/2000, ancillary issues may not appear except in the docket.

**Issue # 1.** Issue: BREACH OF AGREEMENT - CONTRACT (CONTRACT)
Filed By: FRANCIS ENERGY LLC
Filed Date: 12/15/2021

| Party Name | Disposition Information |
| --- | --- |
| **Defendant:**<br>BROADBAND TELCOM POWER INC | |

# DOCKET

| Date | Code | Description | Party | Count | Amount |
|---|---|---|---|---|---|
| 12-15-2021 | [ TEXT ] | CIVIL RELIEF MORE THAN $10,000 INITIAL FILING. | | #1 | |
| 12-15-2021 | [ CONTRACT ] | BREACH OF AGREEMENT - CONTRACT | | | |
| 12-15-2021 | [ DMFE ] | DISPUTE MEDIATION FEE | | | $ 7.00 |
| 12-15-2021 | [ PFE1 ] | PETITION<br>Document Available (#1051156337) TIFF PDF | | | $ 163.00 |
| 12-15-2021 | [ PFE7 ] | LAW LIBRARY FEE | | | $ 6.00 |
| 12-15-2021 | [ OCISR ] | OKLAHOMA COURT INFORMATION SYSTEM REVOLVING FUND | | | $ 25.00 |
| 12-15-2021 | [ OCJC ] | OKLAHOMA COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND | | | $ 1.55 |
| 12-15-2021 | [ OCASA ] | OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES | | | $ 5.00 |
| 12-15-2021 | [ SSFCHSCPC ] | SHERIFF'S SERVICE FEE FOR COURTHOUSE SECURITY PER BOARD OF COUNTY COMMISSIONER | | | $ 10.00 |
| 12-15-2021 | [ CCADMINCSF ] | COURT CLERK ADMINISTRATIVE FEE ON COURTHOUSE SECURITY PER BOARD OF COUNTY COMMISSIONER | | | $ 1.00 |
| 12-15-2021 | [ CCADMIN0155 ] | COURT CLERK ADMINISTRATIVE FEE ON $1.55 COLLECTION | | | $ 0.16 |
| 12-15-2021 | [ SJFIS ] | STATE JUDICIAL REVOLVING FUND - INTERPRETER AND TRANSLATOR SERVICES | | | $ 0.45 |
| 12-15-2021 | [ DCADMIN155 ] | DISTRICT COURT ADMINISTRATIVE FEE ON $1.55 COLLECTIONS | | | $ 0.23 |
| 12-15-2021 | [ DCADMIN05 ] | DISTRICT COURT ADMINISTRATIVE FEE ON $5 COLLECTIONS | | | $ 0.75 |
| 12-15-2021 | [ DCADMINCSF ] | DISTRICT COURT ADMINISTRATIVE FEE ON COURTHOUSE SECURITY PER BOARD OF COUNTY COMMISSIONER | | | $ 1.50 |
| 12-15-2021 | [ CCRMPF ] | COURT CLERK'S RECORDS MANAGEMENT AND PRESERVATION FEE | | | $ 10.00 |

**12-15-2021 [ CCADMIN04 ]** $ 0.50

COURT CLERK ADMINISTRATIVE FEE ON COLLECTIONS

---

**12-15-2021 [ LTF ]** $ 10.00

LENGTHY TRIAL FUND

---

**12-15-2021 [ SMF ]** $ 10.00

SUMMONS FEE (CLERKS FEE)

---

**12-15-2021 [ SMIMA ]**

SUMMONS ISSUED - MAILED BY ATTORNEY

---

**12-15-2021 [ TEXT ]**

OCIS HAS AUTOMATICALLY ASSIGNED JUDGE CIVIL DOCKET F TO THIS CASE.

---

**12-15-2021 [ ACCOUNT ]**

RECEIPT # 2021-4300880 ON 12/15/2021.

PAYOR: FREDERIC DORWART TOTAL AMOUNT PAID: $ 252.14.

LINE ITEMS:

CJ-2021-3571: $173.00 ON AC01 CLERK FEES.

CJ-2021-3571: $6.00 ON AC23 LAW LIBRARY FEE CIVIL AND CRIMINAL.

CJ-2021-3571: $1.66 ON AC31 COURT CLERK REVOLVING FUND.

CJ-2021-3571: $5.00 ON AC58 OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES.

CJ-2021-3571: $1.55 ON AC59 COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND.

CJ-2021-3571: $7.00 ON AC64 DISPUTE MEDIATION FEES CIVIL ONLY.

CJ-2021-3571: $0.45 ON AC65 STATE JUDICIAL REVOLVING FUND, INTERPRETER SVCS.

CJ-2021-3571: $2.48 ON AC67 DISTRICT COURT REVOLVING FUND.

CJ-2021-3571: $25.00 ON AC79 OCIS REVOLVING FUND.

CJ-2021-3571: $10.00 ON AC81 LENGTHY TRIAL FUND.

CJ-2021-3571: $10.00 ON AC88 SHERIFF'S SERVICE FEE FOR COURT HOUSE SECURITY.

CJ-2021-3571: $10.00 ON AC89 COURT CLERK'S RECORDS MANAGEMENT AND PRESERVATION FEE.